UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

EM LTD. and NML CAPITAL, LTD.,                    :
                                                   :
                              Plaintiffs,          :          08 Civ. 7974 (TPG)
                                                   :
                v.                                 :
                                                   :
THE REPUBLIC OF ARGENTINA and BANCO DE LA          :
NACIÓN ARGENTINA,                                  :
                                                   :
                              Defendants.          :
                                                   :
------------------------------------------------------------------------ X

(*additional captions continued on next page*)

**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN SUPPORT OF
MOTION TO VACATE THE 2010 ORDERS AND IN OPPOSITION TO PLAINTIFFS'
MOTIONS (i) TO CONFIRM THE 2010 ORDERS; (ii) FOR RECONSIDERATION OF
ALTER EGO DECISION; AND (iii) TO AMEND ALTER EGO COMPLAINT**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:
Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore

*(captions continued from previous page)*

```
------------------------------------------------------------ X
EM LTD.,                                            :
                                                    :
                          Plaintiff,                :        03 Civ. 2507(TPG)
                                                    :
                    v.                              :
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                          Defendant                 :
                                                    :
                                                    :
------------------------------------------------------------ X
NML CAPITAL, LTD.,                                  :        03 Civ. 8845 (TPG)
                                                    :        05 Civ. 2434 (TPG)
                          Plaintiff,                :        06 Civ. 6466(TPG)
                                                    :        07 Civ. 1910 (TPG)
                    v.                              :        07 Civ. 2690 (TPG)
                                                    :        07 Civ. 6563 (TPG)
THE REPUBLIC OF ARGENTINA,                          :        08 Civ. 2541 (TPG)
                                                    :        08 Civ. 3302 (TPG)
                          Defendant.                :        08 Civ. 6978 (TPG)
                                                    :        09 Civ. 1707 (TPG)
                                                    :        09 Civ. 1708 (TPG)
------------------------------------------------------------ X
```

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 3

      A.   The 2008 Alter Ego Action And *BNA I* ............................................................ 3

      B.   The 2010 Orders ............................................................................................... 5

ARGUMENT .................................................................................................................. 5

I.      THE 2010 ORDERS IMPERMISSIBLY REACH PROPERTY THAT IS
      NOT "USED FOR A COMMERCIAL ACTIVITY" IN THE UNITED
      STATES .................................................................................................................. 5

II.     BNA AND ITS PROPERTY ARE ENTITLED TO IMMUNITY UNDER
      THE FSIA, AND THAT IMMUNITY WAS NEVER WAIVED ......................... 8

      A.   The Republic's Waiver Of Immunity Does Not Provide A Basis For FSIA
      Jurisdiction Over BNA Or Its Property .......................................................... 8

      B.   The Alter Ego Allegations Against BNA Do Not Provide A Basis
      For FSIA Jurisdiction ..................................................................................... 9

III.    PLAINTIFFS CAN NEITHER PLEAD NOR ESTABLISH A PLAUSIBLE
      CLAIM OF ALTER EGO .................................................................................. 12

CONCLUSION.............................................................................................................. 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
  475 F.3d 1080 (9th Cir. 2007) ............................................................................    5

*Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*,
  183 F.3d 1277 (11th Cir. 1999) ................................................................... 11, 14-15

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*,
  122 F.3d 130 (2d Cir. 1997)...........................................................................   11

*Amoco Corp. v. Comm'r of Internal Revenue*,
  138 F.3d 1139 (7th Cir. 1998) .......................................................................   11

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989).......................................................................................    8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)...................................................................................   12

*Bayer & Willis Inc., v. Republic of Gambia*,
  283 F. Supp. 2d 1 (D.D.C. 2003)..................................................................  12-13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................   12

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  447 F.3d 411 (5th Cir. 2006) .........................................................................   11

*Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) .....................................................................    9

*Casale v. Comm'r of Internal Revenue*,
  247 F.2d 440 (2d Cir. 1957)...........................................................................   14

*Colella v. Republic of Argentina*,
  No. 07-80084 WHA, 2007 WL 1545204 (N.D. Cal. May 29, 2007) ................    6

*Conn. Bank of Commerce v. Republic of Congo*,
  309 F.3d 240 (5th Cir. 2002) .........................................................................   5-6

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 109 (2007)....................    6

*EM Ltd. v. Republic of Argentina*,
  No. 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) ("*BNA I*").......... *passim*

**Page(s)**

*EM Ltd. v. Republic of Argentina,*
No. 03 Civ. 2507 (TPG), 2010 WL 1404119 (S.D.N.Y. Apr. 7, 2010),
*appeal docketed*, 10-1487-cv(L) (2d Cir. Apr. 21, 2010) ...................................................  14

*EM Ltd. v. Republic of Argentina,*
No. 06 Civ. 7792 (TPG), 2010 WL 2399560 (S.D.N.Y. June 11, 2010),
*appeal withdrawn and dismissed*, 10-2929-cv (2d Cir. July 23, 2010) .................................  2, 6-7

*First National City Bank v. Banco Para El Comercio Exterior de Cuba,*
462 U.S. 611 (1983) ("*Bancec*") ...........................................................................................  *passim*

*Hercaire Int'l, Inc. v. Argentina,*
821 F.2d 559 (11th Cir. 1987) ..........................................................................................  9, 13

*Letelier v. Republic of Chile,*
748 F.2d 790 (2d Cir. 1984) .............................................................................................  11, 15

*LNC Invs., Inc. v. Republic of Nicaragua,*
115 F. Supp. 2d 358 (S.D.N.Y. 2000), *aff'd sub nom.*, *LNC Invs., Inc. v. Banco Central
de Nicaragua*, 228 F.3d 423 (2d Cir. 2000) .........................................................................  9

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
9 F. Supp. 2d 300 (S.D.N.Y. 1998) ...................................................................................  14

*Saudi Arabia v. Nelson,*
507 U.S. 349 (1993) ..........................................................................................................  8

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
369 F.3d 34 (2d Cir. 2004) ................................................................................................  10-11

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
296 F.3d 1154 (D.C. Cir. 2002) ........................................................................................  10


**Rules and Statutes**

28 U.S.C. § 1603(a) .........................................................................................................  8

28 U.S.C. § 1603(b) .........................................................................................................  8

28 U.S.C. § 1605(a)(1) .....................................................................................................  8

28 U.S.C. § 1610(a) ..........................................................................................................  1, 5

28 U.S.C. § 1610(a)(1) .....................................................................................................  8

28 U.S.C. § 1610(d) ..........................................................................................................  5

**Page(s)**

28 U.S.C. § 1610(d)(1) ..................................................................................................... 8

N.Y. C.P.L.R. 6212(a) ..................................................................................................... 12


**Other Authorities**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 .............................. 9

Defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum of law in support of defendants' motions to vacate attachment orders dated May 28, 2010 and modified on June 11, 2010 (the "2010 Orders"), and in opposition to plaintiffs' motions (i) to confirm the 2010 Orders; (ii) for reconsideration of the Court's decision in *EM, Ltd. v. Republic of Argentina*, 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) ("*BNA I*") which, *inter alia*, dismissed the alter ego complaint against Banco de la Nación Argentina ("BNA"); and (iii) for leave to amend the alter ego complaint against BNA.

## PRELIMINARY STATEMENT

To avoid burdening the Court by repeating BNA's arguments, the Republic joins in the motion and memorandum of law filed today by BNA. The Republic writes separately on three particular grounds requiring vacatur of the 2010 Orders and denial of plaintiffs' motions.

*First*, the 2010 Orders must be vacated because they are overbroad and reach property that is not used by the Republic for a commercial activity in the United States, as required under the FSIA, 28 U.S.C. § 1610(a). The 2010 Orders reach:

- BNA's Asset Pledge Account at HSBC (the "Asset Pledge Account"), which is not property of the Republic, and which, at the time the 2010 Orders were issued, was *already* attached and restrained by orders obtained by plaintiffs in 2008;

- An account of the Argentine Ministry of Science, Technology, and Productive Innovation (the "ANPCT Account"), which was *also* already attached and restrained at the time the 2010 Orders were issued;

- BNA property held at HSBC and JPMorgan Chase. This property, like the Asset Pledge Account, is plainly not property of the Republic, much less property being used by the Republic for a commercial activity in the United States.

The first two accounts above – the Asset Pledge Account and the ANPCT Account

– *have been frozen since September 2008*, when plaintiffs first obtained *ex parte* attachment and

restraining orders (the "2008 Orders") in connection with their alter ego action. After the Court issued the *BNA I* decision dismissing plaintiffs' alter ego complaint and vacating plaintiffs' attachments and restraints except with respect to the restraining order directed to the ANPCT account, the 2008 Orders *remained in place* by agreement of the parties pending plaintiffs' motion for reconsideration. That motion remains pending.

Because the Asset Pledge Account and ANPCT Account were frozen at the time the 2010 Orders were issued, the funds were not being "used" for any purpose – let alone for a commercial activity – at the time the 2010 Orders were issued, and the attachments must be vacated. As the Court recently held in denying plaintiffs' attempt to re-attach $100 million of Banco Central de la República Argentina ("BCRA") funds that were "first attached on December 30, 2005, and [had] been frozen by stipulation since January 9, 2006": To hold that "frozen assets were 'used for a commercial activity' for FSIA purposes would be inconsistent with the Second Circuit's recent holding in [*Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130-31 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 1691 (2010)]." *See EM Ltd. v. Republic of Argentina*, No. 06 Civ. 7792 (TPG), 2010 WL 2399560, at \*4 (S.D.N.Y. June 11, 2010), *appeal withdrawn and dismissed*, 10-2929-cv (2d Cir. July 23, 2010).

Insofar as the 2010 Orders reach additional BNA property held at HSBC and JPMorgan, they must be vacated because, in addition to the reasons stated by BNA and *infra*, such property is not property of the Republic and is not being "used" by the Republic at all.

*Second,* plaintiffs' motions must be denied and the attachments must be vacated because the Republic's waiver of immunity does not extend to BNA. In the bond documentation at issue the Republic waived *only* the immunity that it could claim for itself and its property. This Court does not have jurisdiction under the FSIA over plaintiffs' claim against *BNA* and *its*

2

property based upon *the Republic's* waiver in the bond documentation.  Plaintiffs allege no facts establishing that BNA, directly or through the Republic, somehow waived its immunity with respect to this alter ego claim.

      *Third,* plaintiffs have not pled, and cannot establish, that BNA is the alter ego of the Republic – either as of 2008 or 2010 – under *Bancec*'s "fraud or injustice" doctrine.  *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*").  As an agency or instrumentality of the Republic, BNA is entitled to a presumption of separateness under *Bancec* and its progeny.  None of plaintiffs' allegations with respect to BNA are related to rights derived from the bonds or the Republic's default, and therefore cannot provide a ground to equate BNA with the Republic as to the particular claims at issue.

      At bottom, the latest round of motions by plaintiffs should fail, just as they did in September 2009.  The Court was absolutely correct in *BNA I* to reject plaintiffs' alter ego claims against BNA, a large commercial bank with its own assets, liabilities, and creditors.  The mere additional fact that loans have been made by the bank to the Republic (and repaid by the Republic) is an insufficient basis for revisiting the Court's conclusions concerning BNA, and would require a drastic departure from the FSIA and alter ego precedent.

## BACKGROUND

### A.    The 2008 Alter Ego Action And *BNA I*

      On September 12, 2008, plaintiffs filed a complaint seeking a declaratory judgment that BNA was the alter ego of the Republic and therefore liable for the Republic's debts.  Plaintiffs also obtained *ex parte* attachment orders and restraining notices directed at property of BNA and property of the Republic held at BNA (Ex. E).[1]  Following a sweep of

---

[1]     All exhibits are attached to the Declaration of Carmine D. Boccuzzi, dated July 30, 2010.

more than 3,000 institutions in New York, plaintiffs identified three accounts that they sought to
attach and restrain: (1) the BNA Asset Pledge Account at HSBC, (2) an account at BNA's New
York branch of the Instituto Nacional de Tecnología Agropecuaria, an entity separate from the
Republic (the "INTA Account"), and (3) the ANPCT Account at BNA's New York branch. *See*
Letter of K. Sywak to Plaintiffs' Counsel, dated Sept. 26, 2008 (Ex. G); Garnishee Statement of
BNY, New York Branch, dated Sept. 25, 2008 (Ex. F).

On September 30, 2009, the Court held in *BNA I* that plaintiffs' allegations "did
not add up to a degree of de facto ownership or control of BNA's funds sufficient to justify an
alter ego ruling," and that "evidence about the expanded power of the Republic to borrow from
BNA is not sufficient to justify holding that BNA was or is the alter ego of the Republic." 2009
WL 3149601, at **6-7. The Court therefore granted the motions by BNA and the Republic to
dismiss plaintiffs' complaint for a declaratory judgment against BNA, and vacated all
attachments or restraints directed at property of BNA, including those directed at the Asset
Pledge Account. *Id.* at *8.

The Court also vacated plaintiffs' restraints as to the INTA Account.[2] The Court
granted, however, plaintiffs' motion to confirm their restraints as to the ANPCT Account, based
on its determination that the account was used for a commercial activity. *Id.*

Plaintiffs moved for reconsideration of *BNA I* on October 15, 2009. The parties
agreed to maintain freezes on the accounts pending a decision on plaintiffs' motion for

---

[2]     The 2008 Orders resulted in the freezing of approximately $2,000 in the INTA Account. In *BNA*
*I*, the Court vacated the attachments and restraints of the INTA Account, holding that INTA "is
an independent entity" from the Republic. 2009 WL 3149601 at *7. The Court also denied
plaintiffs' request for further discovery regarding INTA. *Id.* Although the attachments and
restraints remain in place pending plaintiffs' motion for reconsideration, plaintiffs have not
argued for reconsideration of the denial of the attachments and restraints of the INTA Account,
nor do they argue, because they cannot, that the INTA Account should now be re-attached.

reconsideration. *See* Letter of D. Hranitzky to J. Griesa, dated Oct. 19, 2009 (Ex. K); Letter of

R. Cohen to J. Griesa, dated Nov. 4, 2009 (Ex. L).

**B.      The 2010 Orders**

On May 28, 2010, with the accounts still frozen, plaintiffs obtained *ex parte*

orders of attachment over the same property that had been frozen in 2008, along with other

property held by BNA at JPMorgan Chase and HSBC. *See* 2010 Orders (Ex. M); Garnishee

Statement of BNA, New York Branch, dated June 7, 2010 (Ex. N). The 2010 Orders were

modified on June 11, 2010. *See* June 11, 2010 Stipulation and Order (Ex. O).

Plaintiffs now move to confirm the 2010 Orders. Plaintiffs also argue that they

should be permitted to amend their complaint to take into account new alter ego allegations as of

2010, while simultaneously continuing to urge the Court to reconsider its conclusion that BNA

was not the alter ego of the Republic as of 2008.

**ARGUMENT**

**POINT I**

**THE 2010 ORDERS IMPERMISSIBLY REACH PROPERTY THAT IS NOT "USED
FOR A COMMERCIAL ACTIVITY" IN THE UNITED STATES**

The 2010 Orders must be vacated because they reach accounts that are not "used

for" a commercial activity by the Republic in the United States, a requirement for attachment of

foreign state property under the FSIA. *See* 28 U.S.C. § 1610(a) & (d). To satisfy the FSIA

"used for" test, "the property in question [must be] put into action, put into service, availed or

employed *for* a commercial activity, not *in connection* with a commercial activity or *in relation*

to a commercial activity." *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1091

(9th Cir. 2007); *see also Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 254 (5th

Cir. 2002) ("[T]he phrase 'used for' in § 1610(a) is not a mere syntactical infelicity that permits

5

courts to look beyond the 'use' of property, and instead try to find any kind of nexus or connection to a commercial activity in the United States."). Plaintiffs must further establish commercial activity based on the "actual, not hypothetical, use." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 484 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 109 (2007); *see also Colella v. Republic of Argentina*, No. 07-80084 WHA, 2007 WL 1545204, at \*\*5-6 (N.D. Cal. May 29, 2007) (the "used for a commercial activity" exception should be "strictly construed"; finding that the Argentine presidential airplane was "employed for strictly non-commercial activities" even when undergoing maintenance and servicing necessary to achieve its governmental use).

Critically here, as this Court recognized in its June 11, 2010 opinion concerning the "re-frozen" reserves of the Central Bank of Argentina, property that is sought to be attached or restrained under the FSIA "must have been 'used for a commercial activity' *at the time* the writ of attachment or execution is issued." *EM,* 2010 WL 2399560, at \*3 (quoting *Aurelius*, 584 F.3d at 130) (emphasis in original)). The funds in the ANPCT Account and the Asset Pledge Account *were already attached and restrained* on May 28, 2010, when plaintiffs obtained the 2010 Orders, and had been so attached and restrained since the Court issued plaintiffs' first orders to BNA in September 2008. *See* Letter of D. Hranitzky, dated Oct. 19, 2009 (Ex. K). Thus, like the BCRA reserves at issue in the Court's June 11 opinion in *EM*, these accounts were by definition not being "used for a commercial activity" – or for anything at all – at the time the 2010 Orders were issued. *See EM*, 2010 WL 2399560, at \*4 ("[I]t is difficult to see how a sum of money frozen by stipulation and thereby entirely unavailable to defendants for more than four years has been 'used' for any activity at all, commercial or not."); *id.* ("[B]ecause the FRBNY funds have been frozen for the past four years, neither BCRA nor the Republic has had the

6

opportunity to use the funds for commercial activity throughout that time . . . ."). As this Court

has already held, "to hold . . . that frozen assets were 'used for a commercial activity' for FSIA

purposes would be inconsistent with the Second Circuit's recent holding in *Aurelius*, 584 F.3d at

130-31." *EM*, 2010 WL 2399560, at *4.

     Re-attachment of the ANPCT Account is also improper not only because the

account was already frozen, but because the account – which is used to promote the development

of scientific research in Argentina by facilitating the proper disbursement of grant funds received

from the Inter-American Development Bank – was not used for commercial activity by the

Republic even at the time of the original 2008 Orders. *See* Declaration of Rodolfo Ariel Blasco,

dated Oct. 28, 2008, ¶¶ 3-5 (Ex. H). The Republic hereby repeats and incorporates the

arguments made as to the ANPCT in its memorandum of law, dated October 31, 2008, its reply

memorandum of law, dated January 16, 2009, and in the October 28, 2008 Blasco Declaration

(Exs. H – J).[3]

     Finally, the BNA property held at HSBC and JPMorgan Chase is not property of

the Republic, much less property being used by the Republic for a commercial activity in the

United States. For the reasons below and those discussed by BNA – and as the Court properly

concluded in *BNA I* , 2009 WL 3149601 at *6 ("The Republic does not control the day-to-day

operations of this large commercial bank"; plaintiffs' allegations "[do] not add up to a degree of

de facto ownership or control of BNA's funds sufficient to justify an alter ego ruling") – the

property of BNA cannot be attached by plaintiffs.

---

[3]  The Republic incorporates and relies on all of its filings to date in 08 Civ. 7974 (TPG), which are
listed in the attached Addendum.

7

## POINT II

### BNA AND ITS PROPERTY ARE ENTITLED TO IMMUNITY UNDER THE FSIA, AND THAT IMMUNITY WAS NEVER WAIVED

The attachments of BNA property – the Asset Pledge Account and the property held at HSBC and JPMorgan Chase – must be dissolved, and plaintiffs' repeat attempts to proceed against BNA must fail as a matter of law, because BNA is entitled to immunity from suit and its property is immune from attachment under the FSIA.

### A.   The Republic's Waiver Of Immunity Does Not Provide A Basis For FSIA Jurisdiction Over BNA Or Its Property

It is fundamental that the FSIA "is the sole basis for obtaining jurisdiction over a foreign state in the courts of [the United States]." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  It also cannot be disputed that BNA is an "agency or instrumentality" of the Republic as defined in 28 U.S.C. § 1603(b).  Accordingly, BNA is a "foreign state" entitled to a presumption of separate legal status from the Republic, *see* 28 U.S.C. § 1603(a); *Bancec*, 462 U.S. at 628, and it is also "presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

Plaintiffs are not entitled to rely upon the Republic's waiver of *its* immunity to overcome the presumption of immunity of *BNA*.  BNA did not waive its immunity from suit in the United States under § 1605(a)(1) or immunity from judgment execution or pre-judgment attachment under §§1610(a)(1) or (d)(1).  In the 1994 Fiscal Agency Agreement ("FAA") in connection with which the securities entitlements purchased by plaintiffs were issued, the Republic waived only *its own* immunity from suit and consented to the jurisdiction of New York courts in connection with claims based upon the bonds. *See* FAA § 22 (Ex. A).  The bonds issued pursuant to the FAA further provided that to the extent that "the *Republic or any of its*

8

*revenues, assets or properties*" shall be entitled to immunity, the Republic waived such

immunity, to the extent permitted by law. *See, e.g.,* Global Note for Bond US040114AR16 at A-

15(Ex. D) (emphasis added).

It is clear from the plain language and context of the Republic's waiver that it was

not intended to apply to BNA or BNA's property, or to any other Republic-owned entity or

public entity. Indeed, the waiver was made years before plaintiffs even claim that BNA became

the alter ego of the Republic. As the legislative history of the FSIA confirms, "the foreign state

*may* waive the immunity of its political subdivisions, agencies or instrumentalities," but such a

waiver on behalf of instrumentalities is *not* implied from the foreign state's explicit waiver of

immunity only on its own behalf. H.R. Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976

U.S.C.C.A.N. 6604, 6617 (emphasis added).[4]  Because the immunity of BNA has not been

waived by contract, this Court lacks jurisdiction over BNA and its property.

## B.     The Alter Ego Allegations Against BNA Do Not Provide A Basis For FSIA Jurisdiction

As the Eleventh Circuit squarely held, plaintiffs' claim that BNA is the

Republic's alter ego, "even if substantiated . . . does not bring the claim within one of the

statutorily-enumerated exceptions either to pre-judgment or post-judgment immunity under the

FSIA." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313 (11th Cir. 2009). Plaintiffs nevertheless

maintain that the Republic's waiver of immunity for itself and its property should be imputed to

---

[4]     As the caselaw demonstrates, when states intend to waive not only their own immunity, but also that of their agencies and instrumentalities, they select words that do so. For example, in *LNC Invs., Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 361 (S.D.N.Y. 2000), *aff'd sub nom.*, *LNC Invs., Inc. v. Banco Central de Nicaragua*, 228 F.3d 423 (2d Cir. 2000), Nicaragua waived sovereign immunity "[t]o the extent that the Republic *or any Government Agency* has or hereafter may acquire any immunity from jurisdiction of any court" (emphasis added). Similarly, Argentina contractually waived "its sovereign immunity and *that of its agencies*" in the agreement at issue in *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 561 (11th Cir. 1987) (emphasis added).

9

BNA, based on the alleged alter ego relationship between the Republic and BNA. *See, e.g.,* Pls.'
Mem. of Law in Supp. of Mot. to Confirm Attachment Orders, dated June 30, 2010, at 22. The
logical flaw in this theory is that waivers of sovereign immunity are transaction-specific and
cannot be imputed *even to the same entity* for purposes of an unrelated claim, let alone to
presumptively separate entities.[5]

        Here, plaintiffs' claim against BNA has no factual or legal nexus to the bonds or
the Republic's waiver in the bond documents. *Cf. World Wide Minerals, Ltd. v. Republic of
Kazakhstan*, 296 F.3d 1154, 1162-63 (D.C. Cir. 2002) (Kazakhstan waived jurisdictional
immunity under the FSIA for some counts asserted in the complaint but not for others because
the waivers by their terms did not extend to the plaintiff's other claims). The Republic's waiver
by its terms applies to litigation "arising out of or based on the Securities or the [FAA]," and
plaintiffs' claim against BNA and its property does not fall within that scope. Plaintiffs' claim
against BNA and its property are not supported by any allegations establishing BNA's liability
*under the bonds*, but only by allegations that the Republic controls BNA.

        Neither *Bancec* nor its progeny lends authority to the proposition that, based upon
an alter ego allegation, a sovereign state and its corporate instrumentality can be deemed one and
the same entity *for any and all purposes*, so that whatever is done by one could be freely imputed
to the other. Case law establishes the opposite: an "alter ego" relationship is always limited to a
*specific context*. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 73
n.31 (2d Cir. 2004) (the "alter ego" finding made at an earlier stage of the litigation pertained

---

5      Plaintiffs have established jurisdiction over their claims against the Republic based on the
Republic's waiver of sovereign immunity in the bond agreements. This would not eliminate,
however, the requirement that plaintiffs separately establish subject matter jurisdiction in *some
other action* against the Republic. For instance, if plaintiffs sue on a different contract executed
by the Republic, which contains no waiver provision, the Republic's immunity for purposes of
*that claim* is preserved, and the United States courts would have no jurisdiction.

only to "the limited context" of overruling a jurisdictional defense under the commercial activity exception to the FSIA, *not* to "the larger context of the case as a whole"); *Amoco Corp. v. Comm'r of Internal Revenue*, 138 F.3d 1139, 1147-1149 (7th Cir. 1998) ("for tax purposes the Government of Egypt and [its instrumentality] EGPC should be treated here as a unitary entity, even if in other contexts it would be appropriate to recognize EGPC as a separate corporate body"). The alter ego doctrine must be considered for purposes of a specific dispute and "applies only if . . . the owner exercised complete control over the corporation *with respect to the transaction at issue*" and "such control was used to commit a fraud or wrong" *that gave rise to the plaintiff's claim. Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (emphasis added) (citation omitted); *see also Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (same).[6]

Applying the *Bancec* standards to the facts of this case makes it clear that BNA is *not* the Republic's alter ego for purposes of FSIA jurisdiction arising from the bonds. Even assuming that BNA "is so extensively controlled" by the Republic in terms of BNA providing financing to the Republic that "a relationship of principal and agent is created" in that context – which, as the Court correctly held in *BNA I*, 2009 WL 3149601 at *7, it is not – no such relationship exists in the context of the bond agreements. *Bancec*, 462 U.S. at 629.

---

[6]     *See also Letelier v. Republic of Chile*, 748 F.2d 790, 794-95 (2d Cir. 1984) (separate status of instrumentality not disregarded based on agency prong of *Bancec* because instrumentality did not act as agent in the context of the relevant events giving rise to the government's liability); *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277, 1286-89 (11th Cir. 1999) (same).

## POINT III

## PLAINTIFFS CAN NEITHER PLEAD NOR ESTABLISH A
## PLAUSIBLE CLAIM OF ALTER EGO

The Court correctly concluded in *BNA I* that the "power of the Republic to borrow

from BNA is not sufficient to justify holding that BNA was or is the alter ego of the Republic."

2009 WL 3149601, at **6-7. Plaintiffs' new allegations about entirely legitimate loans from

BNA to the Republic in 2009 and 2010 do nothing to alter that conclusion. In short, plaintiffs

have not pled, and cannot establish, a plausible alter ego claim against BNA, and accordingly the

motions for reconsideration and for leave to amend must be denied. *See Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiffs must

plead enough facts "to raise a right to relief above the speculative level"). Nor are plaintiffs

likely to succeed on the merits of their claims against BNA as required for an order of

attachment under CPLR 6212(a). *See* N.Y. C.P.L.R. 6212(a) (McKinney's 2010) ("On a motion

for an order of attachment, or for an order to confirm an order of attachment, the plaintiff shall

show . . . that it is probable that the plaintiff will succeed on the merits.").

As explained by BNA, plaintiffs' allegations do not amount to the day-to-day

control over BNA necessary to establish alter ego under the first prong of *Bancec* (*i.e.,* the

agency prong). Nor does the second prong of the *Bancec* test – which requires plaintiffs to state

a plausible claim that recognizing BNA's separate status "would work fraud or injustice" –

provide a basis for the 2010 Orders or for any alter ego claim against BNA. The "fraud or

injustice" exception to the presumed separateness of a foreign state instrumentality has been

narrowly construed to apply to situations where the instrumentality "was the vehicle through

which the foreign state incurred the liability," so that it would be unfair to allow the

instrumentality to hide behind a corporate veil from a liability that is essentially its own. *Bayer*

12

& *Willis Inc., v. Republic of Gambia*, 283 F. Supp. 2d 1, 6 (D.D.C. 2003) (citing *Alejandre*, 183

F.3d at 1286-87; *Hercaire*, 821 F.2d at 563).[7]  That is not the case here:  BNA did not issue

Argentine bonds, nor was it involved in the Republic's default on plaintiffs' debt.  It is therefore

"manifestly unfair" to subject BNA and its property to plaintiffs' claims.  *Hercaire*, 821 F.2d at

565.

            Nothing in *Bancec* itself establishes otherwise.  In *Bancec*, the Cuban

Government seized and expropriated Citibank's assets.  Bancec, the Cuban state-owned bank,

sued Citibank on a letter of credit, and Citibank sought a setoff as compensation for its

confiscated property, the value of which exceeded the amount of Bancec's claim.  The Cuban

Government dissolved Bancec, splitting its assets between various entities controlled by the

Government.  The Supreme Court allowed Citibank's setoff, finding that the dissolution of

Bancec by the Cuban Government *during the litigation* and the free disposal of its assets by the

same government thus meant that Bancec was the government's alter ego *for purposes of the*

*litigation. Bancec*, 462 U.S. at 631-32.  The Supreme Court found that Cuban Government had

caused an injustice by using Bancec "to obtain relief in our courts that it could not obtain in its

own right without waiving its sovereign immunity and answering for the seizure of Citibank's

assets." *Id.* at 632.

            There is no allegation that BNA played any such role here.  BNA did not sue

plaintiffs in a U.S. court, nor was it used by the Republic in any action against plaintiffs.

Likewise, plaintiffs do not, and cannot, allege that BNA was either created or dissolved by the

Republic for a specific purpose of avoiding the district court's jurisdiction or avoiding liability.

---

[7]      Another potential situation of "fraud or injustice" is where the "corporate form" of the
instrumentality "is interposed to defeat legislative policies." *Bancec*, 462 U.S. at 629-30.
Plaintiffs do not and cannot make any such allegations here.

13

Given no allegation of involvement by BNA in the relevant events underlying plaintiffs' actions based on their security entitlements, there can be no basis for a finding that BNA acted as the Republic's alter ego in this litigation, or that respecting BNA's presumptive immunity from the Republic's debts on the bond instruments would "work fraud or injustice." *Cf. Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) (finding that the record did "not establish the type of injustice that motivated the Court in [*Bancec*]" given no allegation that Peru's instrumentality "was responsible for the underlying conduct giving rise to Peru's liability" or that "Peru brought an action in this Court seeking to enforce its rights, while simultaneously seeking to avoid the consequences"); *see also Casale v. Comm'r of Internal Revenue*, 247 F.2d 440, 443 (2d Cir. 1957) ("Despite the use of 'sham' and other phrases to characterize the particular transaction under review, the record does not indicate any contention by the Commissioner that the Corporation itself is a sham or alter ego for all purposes.").

That plaintiffs may not be able to enforce their judgments against the Republic is a plainly insufficient basis to disregard BNA's separate legal personality.[8] As the *Alejandre* court held:  while the "concern about the injustice of preventing plaintiffs from collecting their judgment is understandable," it is "not the type of injustice that concerned the *Bancec* Court,"

---

[8]    The Court's decision in *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG), 2010 WL 1404119 (S.D.N.Y. Apr. 7, 2010), *appeal docketed*, No. 10-1487-cv(L) (2d Cir. Apr. 21, 2010) involved different alleged facts and does not change this analysis. *See id.* at *29. Moreover, the Republic's full disclosure of the limitations on enforcement of judgments against a foreign state and plaintiffs' undeniable awareness of these restrictions under the FSIA when they purchased the bond interests at steep discounts, either after or in anticipation of the Republic's default, defeats any claim of "fraud or injustice." The Republic repeatedly disclosed in the underlying bond documentation that "[t]he Republic of Argentina is a foreign sovereign state. Consequently, it may be difficult for investors to obtain or realize upon judgments of courts in the United States against the Republic." *See, e.g.,* Prospectus for Global Bond US01104AR16, dated Jan. 6, 1997, at 2 (Ex. B), Prospectus Supplement for Global Bond US01104AR16, dated Jan. 22, 1997, at S-2 (Ex. C). Plaintiffs do not even argue (because they cannot) that the Republic's disclosure provides a basis for finding "fraud or injustice."

14

*i.e.,* "the injustice that would result from permitting the foreign state to reap the benefits of our courts while avoiding the obligations of international law." 183 F.3d at 1286 & n.22 (quoting *Bancec*, 462 U.S. at 632-34). The concern about collection is "present in every case in which the plaintiff seeks to hold an instrumentality responsible for the debts of its related government," and "[a]llowing the *Bancec* presumption of separate juridical status to be so easily overcome would effectively render it a nullity." *Id.* at 1286-87. Consistent with this reasoning, the *Alejandre* court found no "injustice" in preserving the separate status of the government's instrumentality in "the absence of any evidence that [it] was involved in the violation" that gave rise to the lawsuit. *Id.* at 1287; *accord Letelier*, 748 F.2d at 791 ("We reverse although we recognize that our decision may preclude the plaintiffs from collecting on their judgment. . . . To rule otherwise here would only illustrate once again that hard cases make bad law.").

The same result is required here: BNA's lack of connection to the Republic's bond default defeats any claim that BNA's property is subject to plaintiffs' claims. Indeed, disregarding the corporate separateness of BNA would work an injustice on the bank itself, as well as its third party creditors – *e.g.*, customers, employees, vendors, service providers – who are owed money and should be paid. *Id.*, 748 F.2d at 795 n.1 (expressing concern for non-party creditors of LAN in case where "no equitable set-off [was] involved … as the net result [would] be an out-of-pocket loss to LAN"; "To adopt a rule facilitating an easy piercing of the corporate veil threatens the interests of such unsuspecting third parties.").

## CONCLUSION

For the foregoing reasons and the reasons stated by BNA, the Court should grant

defendants' motions to vacate the 2010 Orders, and deny plaintiffs' motions (i) to confirm the

2010 Orders, (ii) for reconsideration of *BNA I*; and (iii) for leave to amend the alter ego

complaint against BNA.

Dated:  New York, New York            Respectfully submitted,
        July 30, 2010

                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                      By: _____

                                          Jonathan I. Blackman (jblackman@cgsh.com)
                                          Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
                                          Christopher P. Moore (cmoore@cgsh.com)

                                      One Liberty Plaza
                                      New York, New York 10006
                                      (212) 225-2000

                                      Attorneys for the Republic of Argentina

16

**ADDENDUM**

1. Memorandum of Law of the Republic of Argentina in Support of Motion to Vacate Ex Parte Restraining Orders and Orders of Attachment and in Opposition to Plaintiffs' Motion to Confirm, dated Oct. 31, 2008

2. Declaration of Amy Chung, dated Oct. 31, 2008, and exhibits

3. Declaration of Rodolfo Ariel Blasco, dated Oct. 28, 2008

4. Declaration of Carlos Alberto Paz, dated Oct. 30, 2008

5. Reply Memorandum of Law of the Republic of Argentina in Further Support of Motion to Vacate Ex Parte Restraining Orders and Orders of Attachment and in Opposition to Plaintiffs' Cross-Motion for Issuance of Writ of Execution Against Certain Property Subject to the Orders, dated Jan. 16, 2009

6. Memorandum of Law of the Republic of Argentina in Support of Its Motion to Dismiss Pursuant to Rule 12(b)(6), dated Apr. 8, 2009

7. Declaration of Amy Chung, dated Apr. 8, 2009, and exhibit

8. Reply Memorandum of Law of the Republic of Argentina in Further Support of Its Motion to Dismiss Pursuant to Rule 12(b)(6), dated May 29, 2009

9. Memorandum of Law of the Republic of Argentina in Opposition to Motion for Reconsideration, dated Nov. 5, 2009

## CERTIFICATE OF SERVICE

I, Richard V. Conza, an attorney admitted to practice in the State of New York and the Managing Attorney of the firm of Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On the 30th day of July 2010, I have caused service of the Memorandum of Law of the Republic of Argentina in Support of Motion to Vacate the 2010 Orders and in Opposition to Plaintiffs' Motions (i) to Confirm the 2010 Orders; (ii) for Reconsideration of Alter Ego Decision; and (iii) to Amend Alter Ego Complaint, dated July 30, 2010, to be made by Federal Express and by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action.

Dated:   New York, New York
       July 30, 2010

                                         Richard V. Conza