UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EM LTD. and NML CAPITAL, LTD.,

              Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA and BANCO
DE LA NACION ARGENTINA,

              Defendants.

08 CV 7974 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NML CAPITAL, LTD.,

              Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

              Defendant.

03 CV 8845 (TPG)
05 CV 2434 (TPG)
06 CV 6466 (TPG)
07 CV 1910 (TPG)
07 CV 2690 (TPG)
07 CV 6563 (TPG)
08 CV 2541 (TPG)
08 CV 3302 (TPG)
08 CV 6978 (TPG)
09 CV 1707 (TPG)
09 CV 1708 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EM LTD.,

              Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

              Defendant.

03 CV 2507 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### SECOND DECLARATION OF EDUARDO BARREIRA DELFINO

      Eduardo Barreira Delfino declares as follows:

      1.      I am an attorney licensed to practice in Argentina since 1966 and have served as a

Professor of Law at various universities including Universidad de Buenos Aires, Universidad

Catolica Argentina, Universidad Austral, Universidad Nacional del Centro de Buenos Aires,

Universidad de Belgrano, Universidad Torcuato Di Tella Universidad Nacional de La Plata,

Universidad Nacional del Litoral, Universidad Nacional de Rosario, Universidad Católica de Cuyo, Universidad Empresarial Siglo 21 and Universidad Santo Tomás de Aquino.

2.    My areas of expertise include the law of the juridical structure of Argentine entities and Argentine banking and financial law.  I have written extensively on these matters and my publications include books and doctrinaire works on the juridical organization of businesses, the law of the financial system, the law of financial entities and banking and financial transactions. Therefore, according to what was stated above, I submit this declaration.

### Legal Framework of Banco de la Nación Argentina Financing to the National Government

3.    Pursuant to the Argentine body of laws, the financing regime of the National Government is set forth in  Law 24.156 and its amendments (Law of Financial and Control Systems Administration of the National Public Sector), which sets forth that the National Government shall not be able to execute any public credit transaction that is not considered in the "*Budget Law*" of the year in question.

4.    Banco de la Nación Argentina, pursuant to its Charter,  is a juridically  autarkic and economically autonomous entity, governed by the Law of Financial Institutions,  No. 21.526, under the supervision of the Central Bank of Argentina, as the comptroller of the institutionalized banking system of the country.

5.    Both the Budget Law and Banco de la Nación Argentina's Charter establish strong limitations for this Institution to lend to the National Government. Article 25 of Banco de la Nación Argentina's Charter states that "***the Bank shall not be able to grant credits to the Nation, the provinces or municipalities, or to the agencies or instrumentalities depending on them, unless they have a special guaranty of the Secretariat of the Treasury, of the Ministry of Economy that allows for the effective automatic reimbursement***". This implies that the

National Government may request and have access to the financing by Banco de la Nación, with severe restrictions as to the guaranties that must be provided. As to the amount and application of the loans granted to the National Government, they must comply with the regulatory rules of the Central Bank of Argentina.

    5.1.   In connection with the application and amount of financing.

    Art. 74 of Law 26.422, Argentine National Budget for 2009, sets forth  two limitations for obtaining financing from Banco de la Nación Argentina:

- That the proceeds from the loans are applied to the financing of capital expenses or amortization of debts.

- That the balance of same does not exceed 30 % of the deposits of the non-financial public sector of the Republic at Banco de la Nación Argentina.

    5.2.   In connection with the supporting guaranty.

    Art. 25 of Banco de la Nación Argentina's Charter, sets forth that the required financing shall only be approved upon receiving a ***special guaranty*** of the Secretariat of the Treasury that "***allows for the automatic reimbursement of the credit***."

    6.   Financing from Banco de la Nación Argentina in favor of the National Government can only be granted insofar as the automatic reimbursement in the event of default is allowed.

    7.   Therefore, the possibility of granting financing to the National Government is exceptional and the conditions required are the most rigorous in the market when compared with those existing for companies and corporations in the private sector, as the National Government can not propose and even less impose conditions or offer any kind of guaranties to BNA to obtain financial assistance because that would involve putting aside the law. On the contrary, it is

Banco de la Nación Argentina that imposes the conditions, and it is up to the National Government to accept or not accept them.

8.      Likewise, the requirement for the National Government to give special guaranties that allow for the effective automatic reimbursement of the credits in case of default, tends to ensure the liquidity of Banco de la Nación Argentina and the recovery of its liquidity, so as not to compromise its business activities. Therefore, the National Government agrees that Banco de la Nación Argentina is authorized to directly debit from the Account of the Secretariat of the Treasury with BNA, the corresponding amount for capital, interest and default interest, upon valid notification of default to the National Government. Please note that said Account is used to collect revenues from general taxes and taxes subject to co-participation with the Provinces which are being cancelled by third taxpayers, as well as the amounts from fixed term investments made by the National Government itself and that are credited upon their respective maturities. Such guaranty mechanism may be described as "*self-liquidating*", with no need to resort to law courts for their collection, which means that "*Banco de la Nación Argentina will be the first to collect; if any positive balance remains in the account then the National Government may proceed.*"

9.      Please also note that the current legislation designated the Secretariat of the Treasury and the Secretariat of Finance of the Ministry of Economy and Public Finance as the body responsible for coordinating the systems that compose the Public Administration, both acting jointly, the first one being in charge of the debt of the National Government and the second one in charge of public liquidity.

10.     However it should further be noted that Banco de la Nación Argentina's Board of Directors has the "*indelegable*" duty to approve or not approve all financing applications

submitted by the National Government, fully in compliance with the applicable legal, regulatory, statutory and operating provisions as well as pursuant to objective timing, merit or convenience standards. In this regard, Article 74 of Law 26.422 has not affected the provisions set forth in Article 25 of BNA Charter on this matter.

11.     BNA's financing to the National Government is fully regulated. Banco de la Nación Argentina can not treat the National Government, as a qualified borrower, in a way more favorable than that provided for customers generally, and the National Government can not claim or seek such special treatment. On the contrary, as I have already stated, the treatment towards National Government, as a qualified borrower, is more rigorous and restrictive.

12.     Furthermore, upon a financing application being submitted by the National Government to the Institution, the decision whether to grant or deny the credit falls upon Banco de la Nación Argentina, after duly consideration and technical analysis, and upon verifying that the requirements provided in the legal, regulatory and statutory provisions are met, particularly the following:

- That financing is applied as allowed by the Budgetary Law for the relevant Year
- That the total amount of financing does not exceed thirty (30%) percent of the deposits at BNA of the non-financial National Public Sector of the Republic.
- That disbursements do not affect nor risk the liquidity of BNA.
- That BNA receives a special guaranty of the Secretariats of the Treasury and Finance through a joint resolution.
- That the financing application is approved by the BNA's Board of Directors, according to the customary statutory provisions.
- That the Central Bank of Argentina decides on the framework of the operation

under resolution 76/09 of such Institution (which ensures that all of BNA's loans to the Republic do not exceed 50% of BNA's capital).

- That BNA receives a report from its Outside Auditor –KPMG- regarding compliance with the conditions provided for in items 1.1., 1.2. and 3 of Resolution No. 76/2009 of the Central Bank of Argentina.

13.   As stated above, I have examined the documents submitted to consultation, consisting of:

1.   The corresponding financing applications made by letters of the Ministry of Economy and Public Finance – Secretary of Finance, sent to the President and/or General Manager of Banco de la Nación Argentina, which comply with the conditions established by the Central Bank of Argentina in its Board of Directors Resolution No. 76/09, relating to the financing that Banco de la Nación Argentina may grant to the National Government, in the framework of art. 74 of Law 26422 and art. 25 of the Charter of Banco de la Nación Argentina.

2.   The corresponding resolutions of the Honorable Board of Directors, namely:

a)   Resolution of the Honorable Board of Directors No. 1610, dated 21/05/09, approving a financing to the National Government for an amount of up to 7,300,000,000 (seven billion three hundred million pesos).

b)   Resolution of the Honorable Board of Directors No. 2102 dated 02/07/09, approving a financing to the National Government for an amount of up to 1,000,000,000 (one billion pesos);

c)   Resolution of the Honorable Board of Directors No. 284 dated 28/01/10, approving a financing to the National Government for an amount of up to 900,000,000 (nine

hundred million pesos), and another financing for an amount of up to U$S 156.000.000 (one hundred and fifty six million dollars);

        d)        Resolution of the  Honorable Board of Directors  No.  288 dated 28/01/10, approving an amount of up to $ 4,150,040,000 (four billion one hundred and fifty million and forty thousand pesos).

The above resolutions state the application of the financing, the method of reimbursement, the stipulated conditions, the term and repayment of principal,  the interest agreed, the method of payment, the loan administration commission, charges and  expenses, the payment guaranty, cases of non-compliance and other imposed conditions.

        3.        The other supporting documentation, namely:

        a)        The joint resolutions of the Secretariats of the Treasury and Finance which provide for the corresponding financing operations, including the granting of the respective guaranties  (in accordance with article  74 of Law 26422 and article 25 of the Charter of Banco de la Nación Argentina).

        b)        The resolutions of the Central Bank of Argentina resolving that the financing transactions be considered included in the contents of resolution No. 76/09 (of the same institution).

        c)        The reports issued by the Outside Auditor of Banco de la Nación Argentina –KPGM- regarding the fulfillment of the conditions in the items 1.1., 1.2. and 3 of Resolution No.  76/2009 of  the Central Bank of Argentina.

        14.        Therefore, I verify that the four loans subject to analysis, are valid, legitimate and comply with the applicable legal, statutory and regulatory rules.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Executed on July 19, 2010

/s/ Eduardo Barreira Delfino

Eduardo Barreira Delfino

## **CERTIFICATION**

I hereby certify that I am fluent in both the English and Spanish languages and have reviewed the attached English language translation of the Second Declaration of Eduardo Barreira Delfino, dated July 19, 2010 and it is a correct and accurate translation of the Spanish language.

I further certify under penalty of perjury that the foregoing is true and correct.

Executed on:  July 30, 2010

Mario Diaz-Cruz, III

4824-8436-1479\1

TRIBUNAL DE DISTRITO DELOS ESTADOS UNIDOS

DISTRITO SUR DE NUEVA YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EM LTD. y NML CAPITAL, LTD.,                                08 Civ 7974 (TPG)

                 Demandantes,

- contra -

LA REPUBLICA ARGENTINA y BANCO DE
LA NACION ARGENTINA,

                 Demandados.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x        03 Civ 8845 (TPG)
                                                               05 Civ 2434 (TPG)
NML CAPITAL, LTD.,                                             06 Civ 6466 (TPG)
                                                               07 Civ 1910 (TPG)
                 Demandante,                  07 Civ 2690 (TPG)
                                                               07 Civ 6563 (TPG)
- contra -                                                     08 Civ 2541 (TPG)
                                                               08 Civ 3302 (TPG)
LA REPUBLICA ARGENTINA                                         08 Civ 6978 (TPG)
                                                               09 Civ 1707 (TPG)
                 Demandada.                   09 Civ 1708 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

EM LTD.,

                 Demandante,
                                                               03 Civ. 2507 (TPG)
- contra -

LA REPUBLICA ARGENTINA,

                 Demandada.

- - - - - - - - - - - - - - - - - - - - - - - - - - x-

## SEGUNDA DECLARACIÓN DE EDUARDO ALBERTO BARREIRA DELFINO

       Eduardo Alberto Barreira Delfino declara lo siguiente:

1.      Soy abogado habilitado para ejercer la profesión en la Argentina desde

1966 y me he desempeñado como Profesor de Derecho en varias universidades, incluidas la Universidad de Buenos Aires, la Universidad Católica Argentina, la Universidad Austral, la Universidad Nacional del Centro de Buenos Aires, la Universidad de Belgrano, la Universidad Torcuato Di Tella, la Universidad Nacional de La Plata, la Universidad Nacional del Litoral, la Universidad Nacional de Rosario, la Universidad Católica de Cuyo, la Universidad Empresarial Siglo 21 y la Universidad Santo Tomás de Aquino.

2.      Mis áreas de especialización incluyen la legislación de la estructura jurídica de las instituciones argentinas y el derecho bancario y financiero argentino.  He escrito en forma exhaustiva sobre estas cuestiones y mis publicaciones incluyen libros y trabajos doctrinarios sobre la organización jurídica de los negocios, la legislación del sistema financiero, la legislación de las entidades financieras y las operaciones bancarias y financieras. Por consiguiente, en función de lo expuesto, presento esta declaración.

## Marco legal del financiamiento del Banco de la Nación Argentina al Gobierno Nacional.

3.      Conforme el ordenamiento legal argentino, el régimen de financiamiento del Gobierno Nacional está previsto en la Ley 24.156 y sus modificaciones, denominada Ley de Administración Financiera y de los Sistemas de Control del Sector Público Nacional, en la que se establece que el Gobierno Nacional no podrá formalizar ninguna operación de crédito público que no este contemplada en el *"Ley de Presupuesto"* del año de que se trate.

4.      Por su parte, el Banco de la Nación Argentina, conforme su Carta

Orgánica, es una entidad jurídicamente autárquica y económicamente autónoma, regida por la Ley 21.526 de Entidades Financieras y cuya actuación se encuentra bajo la supervisión del Banco Central de la República Argentina, en su calidad de autoridad de contralor del sistema bancario institucionalizado del país.

5.      Tanto la  Ley de Presupuesto como la Carta Orgánica del Banco de la Nación Argentina establecen fuertes limitaciones para que esta última Entidad pueda prestar al Gobierno Nacional. El Art. 25 de la Carta Orgánica del Banco de la Nación Argentina, señala que "*el Banco no podrá conceder créditos a la Nación, provincias o municipalidades ni a los organismos o reparticiones dependientes de ellas, salvo que cuenten con garantía especial de la Secretaría de Hacienda del Ministerio de Economía, que permita el efectivo reembolso automático*". Ello implica que el Gobierno Nacional pueda solicitar y acceder al financiamiento del Banco de la Nación, existiendo severas restricciones en cuanto  a las garantías que deben otorgarse. Por su parte, los montos y destinos de los préstamos al Gobierno Nacional, deberán ajustarse a lo establecido en las normas reglamentarias del Banco Central de la República Argentina.

5.1. Respecto al destino y a la cuantía del financiamiento.

El Art. 74 de la Ley 26.422 de Presupuesto de Gastos y Recursos de la Administración Pública para el Ejercicio 2009, estableció dos limitaciones para obtener financiamiento del Banco de la Nación Argentina:

- Que el destino de los créditos se aplique al financiamiento de gastos de capital o amortización de deudas.

- Que el monto de los mismos no excedan el 30 % de los depósitos del sector público nacional no financiero en el propio Banco de la Nación Argentina.

5.2. Respecto a la garantía de respaldo.

El Art. 25 de la Carta Orgánica del Banco de la Nación Argentina, establece que únicamente el financiamiento solicitado podrá ser acordado en la medida que cuente con la **garantía especial** del la Secretaría de Hacienda que "***permita el efectivo reembolso automático del crédito***".

6.      Únicamente puede admitirse el financiamiento del Banco de la Nación Argentina a favor del Gobierno Nacional, en la medida que se permita el reembolso automático de los créditos acordados, a su vencimiento.

7.      De este modo, la posibilidad de otorgamiento de financiamiento al Gobierno Nacional reviste carácter excepcional y las condiciones de viabilidad son tan rigurosas, que las convierten en las más exigentes del mercado, si las comparamos con las existentes para empresas y corporaciones del sector privado, puesto que el Gobierno Nacional no puede proponer y menos aún imponer condiciones u ofrecer cualquier tipo de garantías al BNA para ser asistido financieramente, porque ello importaría apartarse de la ley. Sucede todo lo contrario, es el Banco de la Nación Argentina quien impone las condiciones y quedará a criterio del Gobierno Nacional si las acepta o no.

8.      Asimismo la exigencia de que el Gobierno Nacional deba otorgar garantías especiales que posibiliten el efectivo reembolso automático de los créditos ante su incumplimiento, tiende a asegurar la liquidez del Banco de la Nación Argentina y la recuperación de su liquidez, de modo de no comprometer su dinámica operativa. Para ello el Gobierno Nacional acepta que el Banco de la Nación Argentina quede autorizado a debitar directamente en la Cuenta que la Secretaría de Hacienda tiene abierta en la institución, la suma que corresponda en concepto de capital, intereses del préstamo, intereses compensatorios e intereses moratorios, previa notificación

fehaciente del incumplimiento al Gobierno Nacional, para constituirlo en situación de mora. Téngase presente que en la citada Cuenta se recaudan los ingresos en concepto de impuestos generales y aquellos impuestos sujetos a coparticipación con las Provincias, que vayan cancelando los terceros contribuyentes, como así también los importes de las inversiones a plazo fijo, que realice el propio Gobierno Nacional y que se acrediten a sus respectivos vencimientos. Tal mecanismo de realización de la garantía puede describirse como "*auto-liquidable*", sin necesidad de recurrir a los estrados judiciales para su cobro compulsivo, lo que significa "*primero cobra el Banco de la Nación Argentina; si queda algún saldo positivo en la cuenta, recién puede disponer el Gobierno Nacional*".

9.     Por su parte, la legislación vigente estableció como órgano responsable de la coordinación de los sistemas que integran la Administración Pública, a la Secretaría de Hacienda y a la Secretaría de Finanzas, del Ministerio de Economía y Finanzas de la Nación, para actuar en forma conjunta, precisamente por tener asignada la primera de ellas, la tutela del endeudamiento del Gobierno Nacional y la segunda, la tutela de la liquidez pública.

10.     Pero también merece resaltarse que el Directorio del Banco de la Nación Argentina, tiene la función "*indelegable*" de aprobar o no, todas las solicitudes de financiación que presente el Gobierno Nacional, en un todo de acuerdo con las prescripciones legales, reglamentarias, estatutarias y operativas aplicables como así también conforme objetivos criterios de oportunidad, mérito o conveniencia. En este sentido, el Art. 74 de la Ley 26.422 no ha conmovido lo dispuesto por el Art. 25° de la Carta Orgánica del Banco de la Nación en la materia.

11.     El financiamiento del Banco de la Nación Argentina al Gobierno

Nacional esta plenamente reglado. El Banco de la Nación Argentina no puede dar un trato más beneficioso como sujeto de crédito al Gobierno Nacional que el establecido para la clientela en general ni el Gobierno Nacional puede exigirlo o pretenderlo; por el contrario como he manifestado el tratamiento al Gobierno Nacional como sujeto de crédito resulta más riguroso y restrictivo.

12.   A mayor abundamiento, ante la solicitud de financiamiento que el Estado Nacional presentare a la entidad,  es el Banco de la Nación Argentina quien decide si otorga el crédito o lo desestima, luego de su debido tratamiento y análisis técnico, y si se verifica que se encuentran reunidos los requisitos previstos en las normas legales, reglamentarias y estatutaria, en particular:

- Que el destino de las financiaciones sea el autorizado por la Ley de Presupuesto del Ejercicio pertinente.

- Que la suma total de las financiaciones no supere el 30 % de los depósitos del sector público nacional no financiero existente en el propio banco otorgante.

- Que los desembolsos no afecten ni comprometan la liquidez del Banco de la Nación Argentina.

- Que se cuente con la garantía especial, a cargo de las Secretaría de Hacienda y de Finanzas, mediante acto conjunto.

- Que la solicitud de financiamiento sea aprobada por el Directorio del Banco de la Nación Argentina, de conformidad con las previsiones estatutarias de rigor.

- Que el Banco Central de la República Argentina se expida sobre el encuadramiento de la operatoria en el marco de la resolución 76/09 de la

misma entidad (asegurando que la totalidad de los préstamos del BNA a la República no excediera el 50% del capital del BNA);

- Que se cuente con el informe del Auditor Externo del Banco de la Nación Argentina –KPMG- respecto del cumplimiento de las condiciones establecidas en los puntos 1.1., 1.2. y 3 de la Resolución N° 76/2009 del Banco Central de la República Argentina.

13.    Conforme lo expuesto precedentemente he procedido a examinar los documentos sometidos a consulta y que consisten en:

1.

Las respectivas solicitudes de financiamiento efectuadas por notas del Ministerio de Economía y Finanzas Públicas- Secretaría de Finanzas, dirigidas al Presidente y/o Gerente General del Banco de la Nación Argentina, de las que surge que las citadas notas cumplen con las condiciones establecidas por el Banco Central de la República Argentina en la Resolución de su Directorio Nro. 76/09, con relación al financiamiento que el Banco de la Nación Argentina puede otorgar al Gobierno Nacional, en el marco del art. 74 de la Ley Nro. 26422 y el art. 25 de la Carta Orgánica del Banco de la Nación Argentina.

2.

Las pertinentes resoluciones del Honorable Directorio del Banco de la Nación Argentina, a saber:

a) Resolución del Honorable Directorio N° 1610, de fecha 21/05/09, por la cual se dispuso acordar al Gobierno Nacional un financiamiento por hasta la suma de $ 7.300.000.000 (Pesos siete mil trescientos millones).

b) Resolución del Honorable Directorio N° 2102 de fecha 02/07/09, por la cual se dispuso acordar al Gobierno Nacional un financiamiento por hasta la suma de $ 1.000.000.000 (Pesos mil millones);

c) Resolución del Honorable Directorio N° 284 de fecha 28/01/10, por la cual se dispuso acordar al Gobierno Nacional un financiamiento por hasta la suma de $ 900.000.000 (Pesos novecientos millones), y otro por hasta la suma de u$s 156.000.000 (Dólares estadounidenses ciento cincuenta y seis millones);

d) Resolución del Honorable Directorio N° 288 de fecha 28/01/10, por la cual se dispuso acordar hasta la suma de $ 4.150.040.000 (Pesos cuatro mil ciento cincuenta millones cuarenta mil).

De las citadas resoluciones se desprende el destino del financiamiento, la forma de desembolso, las condiciones fijadas para el mismo, el plazo y amortización de capital, el interés pactado, la forma de pago, la comisión por administración de préstamo, cargos y gastos, la garantía de pago, los supuestos de incumplimiento y demás  condiciones impuestas.

3. La demás documentación de respaldo, a saber:

a) Las resoluciones conjuntas de las Secretaría de Hacienda y Finanzas mediante las cuales se disponen  las respectivas operaciones de financiamiento que incluyen  el otorgamiento de las  respectivas garantías (conforme lo dispuesto por el 74 de la Ley 26422 y el art. 25 de la Carta Orgánica del Banco de la Nación Argentina).

b) Las resoluciones del Banco Central de la República Argentina mediante las cuales se resuelve considerar encuadradas las operaciones de financiamiento en lo dispuesto por la resolución Nro. 76/09 (de la misma entidad).

c) Los informes emitidos por el Auditor Externo del Banco de la Nación Argentina – KPGM- respecto del cumplimiento de las condiciones establecidas en los puntos 1.1., 1.2. y 3 de la Resolución N° 76/2009 del Banco Central de la República Argentina .

14.      Así  pude verificar que los cuatro créditos objeto de análisis, resultan válidos, legítimos y ajustados a las prescripciones de las normas legales, estatutarias y reglamentarias aplicables.

**Declaro bajo pena de perjurio,** en virtud de las leyes de los Estados Unidos de América, que las declaraciones anteriores son verdaderas y correctas.

Firmado el *19* de julio  del año 2010.

EDUARDO BARREIRA DELFINO

8